USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/13/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SELIA GUERRERO,

                Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

No. 16-cv-3290 (RJS) (AJP)
ORDER ADOPTING REPORT AND
RECOMMENDATION

RICHARD J. SULLIVAN, District Judge:

    Plaintiff Selia Guerrero brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Social Security Commissioner (the "Commissioner") denying her application for Disability Insurance Benefits and Supplemental Security Income. (Doc. No. 2.) Now before the Court is the Report and Recommendation of the Honorable Andrew J. Peck, Magistrate Judge, recommending that the Court grant Defendant's motion for judgment on the pleadings. (Doc. No. 16 (the "Report").) For the reasons set forth below, the Court adopts the Report in its entirety.

I. BACKGROUND

    The facts of this case are described in detail in the Report. (*See* Report at 1–18.) In brief, Plaintiff stopped working as a babysitter on December 1, 2011 and filed an application for disability benefits on February 14, 2013, alleging a disability onset date of January 19, 2012 and claiming various physical injuries and mental impairments. (*Id.* at 1–2, 5–17.) After the Social Security Administration (the "SSA") denied her application on June 28, 2013, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 2.) On November 4, 2014, ALJ Wallace Tannenbaum conducted a hearing at which Plaintiff was represented by counsel, and on December

29, 2014, he issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*) The SSA's Appeals Council denied Plaintiff's request for review on March 8, 2016. (*Id.*)

Plaintiff, now proceeding *pro se*, filed a civil action in this Court on May 3, 2016. (Doc. No. 2.) On May 17, 2016, the Court both referred the case to Judge Peck and issued a service and scheduling order that instructed the Commissioner to (1) file and serve on Plaintiff the Electronic Certified Administrative Record (e-CAR) within 90 days, and (2) move for judgment on the pleadings within 60 days of the date on which the e-CAR was filed. (Doc. Nos. 6, 7.) The scheduling order then gave Plaintiff another 60 days to file a response to the Commissioner's motion. (Doc. No. 6.) The Commissioner filed the e-CAR on ECF on August 16, 2017 (Doc. No. 10) and filed and served a motion for judgment on the pleadings on October 17, 2016 (Doc. Nos. 13, 14).

On December 6, 2016 – ten days before Plaintiff's response was due – the Commissioner sent a letter to Judge Peck explaining that "through an administrative oversight, a hard copy of the [e-CAR] . . . was not served on [Plaintiff] at the time it was filed [on ECF]." (Doc. No. 15.) The letter added that the Commissioner had just served Plaintiff with a copy of the e-CAR by two-day delivery and would consent to any extension of time she needed to file her response. (*Id.*) Neither Judge Peck nor Plaintiff acted on the letter, and Plaintiff never filed a response to the motion. Judge Peck then issued his Report on December 19, 2016, recommending that the Court grant the Commissioner's motion. (Doc. No. 16.)

On December 28, 2016, Plaintiff requested an extension of time in which to file objections to the Report, explaining that she was attempting to find a lawyer. (Doc. No. 17.) The Court granted her request. (Doc. No. 18.) Then, on January 26, 2017, Plaintiff, now represented by counsel, sent

2

a letter to Judge Peck requesting that he withdraw the Report in order to "afford [Plaintiff] an opportunity to litigate the legal issues in this matter on the merits." (Doc. No. 20.) Specifically, the letter argued that, because the Commissioner failed to timely serve the e-CAR on Plaintiff, and because "[t]he briefing schedule . . . was entirely predicated on the presumption that the e-CAR [would be] filed *and* served," it was not clear that Plaintiff, who had no access to ECF, was obliged to file her response to the Commissioner's motion by December 16, 2016. (*Id.* (emphasis added).) Furthermore, the letter emphasized, Plaintiff had access to the e-CAR for only eight days before her response was due, and could not have been expected to prepare and file a response *pro se* in such a short amount of time. (*Id.*) The letter did not directly address why Plaintiff failed to request an extension after the Commissioner discovered and disclosed the oversight on December 6, or why Plaintiff could not have discerned her response's due date from the date of the Commissioner's motion, with which she *was* served on October 17 (Doc. No. 14). It did, however, suggest that her limited English skills and *pro se* status restricted her ability to ascertain what she was required to do. (*Id.*) Judge Peck nonetheless denied the request to withdraw the Report, reasoning that (1) Plaintiff had submitted no affidavit or other factual support for her claim that she was unaware of the response deadline, (2) Plaintiff never contacted the Court between the date that she received a copy of the Commissioner's motion and the date that her response was due, and (3) because he had "exhaustively reviewed the record and case law," he saw "no need or basis to withdraw the [Report]" absent any evidence that he had "missed something." (Doc. No. 21.)

Plaintiff filed objections to the Report on February 17, 2017 (Doc. No. 24 (the "Objections" or "Obj.")), and the Commissioner filed a response to the Objections on March 16, 2017 (Doc. No. 29). In addition to arguing that the Court should review the Report *de novo* because she was not given an adequate opportunity to respond to the Commissioner's motion, Plaintiff challenges Judge

3

Peck's findings with respect to (1) the ALJ's determination that there is work in the national economy that Plaintiff can perform, (2) the Appeals Council's refusal to consider post-hearing evidence, (3) the ALJ's development of the record, (4) the ALJ's assessment of Plaintiff's credibility, (5) the ALJ's treatment of opinion evidence, and (6) the ALJ's consideration of Plaintiff's noncompliance with certain prescribed treatment regimes. The Commissioner's response addresses all of these objections except Plaintiff's contention about the proper standard of review.

## II. LEGAL STANDARDS

### A. Social Security Benefits Claims

Under the Social Security Act, a claimant is deemed "disabled" – and thus entitled to disability benefits – if she demonstrates an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(a)(1); 20 C.F.R. §§ 404.1505(a), 416.905(a); *see also Hankerson v. Harris*, 636 F.2d 893, 895 n.2 (2d Cir. 1980) (definition of disability "virtually identical" in disability insurance and SSI cases). In evaluating disability claims, an ALJ must apply a five-step sequential analysis, 20 C.F.R. § 404.1520(a)(4), which the Second Circuit has summarized as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998) (citations omitted). The claimant bears the burden at the first four steps, and the Commissioner bears the burden at the final step. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012). The ALJ must weigh all medical evidence and other "relevant evidence" he receives, 20 C.F.R. §§ 404.1520b(b), 416.927(b), but need not resolve all inconsistences, as long as he makes findings supported by substantial evidence. *See Laine v. Soc. Sec. Admin., Comm'r*, No. 07-cv-1251 (RO), 2013 WL 2896968, at *4 (S.D.N.Y. June 13, 2013) ("The ALJ is not required by the regulations to reconcile conflicting medical testimony, but is required to fully assess the record and provide findings that are supported by substantial evidence in the record.").

### B. Judicial Review

A district court may not disturb an ALJ's decision if it is based on correct legal principles and supported by substantial evidence. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is "more than a mere scintilla" of evidence; "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). The substantial evidence standard "applies not only to basic evidentiary fact-finding but extends to inferences and conclusions drawn from such facts." *Gracia*, 1998 WL 599714, at *4 (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)). Thus, the Commissioner's "findings of fact, and the inferences and conclusions drawn from those findings, are conclusive where a reviewing court's independent analysis of the evidence may differ from the Commissioner's analysis." *Id.* (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)). Furthermore, the existence of contrary evidence does not suffice to find in favor of Plaintiff if substantial evidence otherwise supports the ALJ's findings. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The Court may reject a finding only if "a reasonable factfinder would *have to*

5

*conclude otherwise.*" *Brault*, 683 F.3d at 448 (2d Cir. 2012) (internal quotation marks omitted) (emphasis in original).

C. Review of the Report and Recommendation

The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). If a party "properly objects" to – that is, raises objections that are "clearly aimed at particular findings in" – the magistrate judge's report, the district court reviews those findings *de novo*. *See Rodriguez*, 2014 WL 5038410, at *3 (citations omitted); *see also McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009). Conversely, if the objections are improper – because they are "conclusory," "general," or "simply rehash or reiterate the original briefs to the magistrate judge," *Rodriguez*, 2014 WL 5038410, at *3 – the district court will review the magistrate's findings only for clear error, *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) (citation omitted).

III. DISCUSSION

Plaintiff's objections, all of which constitute arguments raised for the first time in this case, fall into two categories: (1) those that merely protest the ALJ's findings (*see* Obj. points I, III, IV, VII), and (2) those that at least arguably properly object to Judge Peck's Report itself (*see id.* points II, V, VI). Ordinarily, the Court would treat the objections in the first category as improper and would review the Report's corresponding findings only for clear error. In addition, although "[t]he question [w]hether a party may raise a new legal argument . . . for the first time in objections to [a magistrate judge's report and recommendation] has not yet been decided in this Circuit," *Belen v. Colvin*, No. 14-cv-6898 (PGG) (JCF), 2016 WL 1048058, at *3 (S.D.N.Y. Mar. 11, 2016) (citing cases), district courts generally refuse to consider such arguments in order to avoid "undermin[ing] the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is

issued to advance additional arguments," *Abu-Nassar v. Elders Futures, Inc.*, No. 88-cv-7906 (PKL), 1994 WL 445638, at *5 n.2 (S.D.N.Y. Aug. 17, 1994). Plaintiff nonetheless urges the Court to conduct a *de novo* review of all of the Report's findings to which she objects because the Commissioner's late service of the e-CAR, together with Judge Peck's prompt work, meant that the Report "issued before [she] had the opportunity to present her case." (Obj. at 33.) Aside from a passing reference to the Fifth Amendment right to due process of law and a strained analogy to equitable tolling, Plaintiff does not support her position with any legal authority. (*See* Obj. at 31–33.) Oddly, the Commissioner's response to the Objections altogether fails to address Plaintiff's request for *de novo* review; indeed, it seems to assume that *de novo* review is the appropriate standard. (*See* Doc. No. 29.)

Having considered the parties' submissions and the procedural history of this case, the Court will conduct a *de novo* review of the objected-to findings. With respect to improper objections, district courts always "retain[] the power to engage in *sua sponte* review of any portion of the magistrate's report and recommendation, regardless of the absence of objections," and "[s]uch *sua sponte* review may be under a *de novo* standard, or any lesser standard of review." *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 514 (S.D.N.Y. 1997) (quoting 7 Pt. 2 Moore's Federal Practice, ¶ 72.04[10.–1], at 72–95), *aff'd*, 136 F.3d 313 (2d Cir. 1998); *see also Mathews v. Weber*, 423 U.S. 261, 271 (1976) ("The authority and the responsibility to make an informed, final determination . . . remains with the [district] judge."). As for arguments raised for the first time in objections to a magistrate's report, courts in this circuit have considered such arguments in certain circumstances, for example when they concern questions of law whose resolution is not open to serious question and fairness and efficiency counsel in favor of review. *See, e.g., Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 434 (S.D.N.Y. 2015) (applying the Second Circuit's standard for consideration of

new legal arguments raised for the first time in a motion for reconsideration). Here, the usual rationale for reviewing improperly objected-to findings only for clear error does not apply, since Plaintiff never submitted a response to the Report and the Commissioner appears to have been largely responsible for her confusion about when her response was due. Furthermore, Plaintiff's objections do not present novel questions of law, and reviewing the findings to which she objects *de novo* is simply a matter of reviewing Judge Peck's recommendations for correctness rather than reasonableness. Accordingly, the Court finds that fairness and efficiency counsel in favor of treating all of Plaintiff's objections as proper and reviewing the corresponding findings in the Report *de novo*. The Court will address the objections in the order in which Plaintiff presents them.

A. The ALJ's Analysis at Step Five

Plaintiff first objects to Judge Peck's conclusion that the ALJ properly determined, at step five of the sequential analysis for disability determinations, that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Doc. No. 10 ("e-CAR") at 61; *see also* Obj. at 33–35; Report at 39–44.) She argues that "[t]he ALJ's reliance on a mechanical application of the Medical-Vocational Rules," which are also known as the "Grids," "constitutes legal error because [Plaintiff had] significant non-exertional impairments."[1] (Obj. at 34.) More particularly, she contends that the ALJ erred by "looking at the various non-exertional

---

[1] The "Grids" "take[] into account the claimant's residual functional capacity in conjunction with the claimant's age, education[,] and work experience," *Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996), in order to determine "whether the claimant can engage in any substantial gainful work existing in the national economy," *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999). "In the ordinary case, the [ALJ] meets his burden at the fifth step by resorting to the [Grids]." *Id.* (internal quotation omitted). "Exclusive reliance on the [G]rids is inappropriate," however, "where [they] fail to describe the full extent of a claimant's physical limitations," and particularly where a claimant's "exertional impairments are compounded by *significant* nonexertional impairments that limit the range of sedentary work that the claimant can perform." *Id.* (emphasis added and internal quotation omitted). In such circumstances, an ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Id.* (internal quotation omitted).

facts and [Plaintiff's] language abilities separately, rather than together."[2] (*Id.*) While the relationship between these two statements is not quite clear, the Court construes Plaintiff's argument to be that if the ALJ had properly considered her various non-exertional limitations cumulatively rather than individually, he would have been compelled to find that she had significant non-exertional impairments, which in turn would have required him to consult with a vocational expert rather than rely solely on the "Grids." *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert.") (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).

This objection is easily disposed of. As Judge Peck's Report explains, the ALJ considered each of Plaintiff's non-exertional limitations in turn – her mental impairments and her inability to communicate effectively in English – before determining that those limitations, even taken together, would not significantly diminish her ability to perform unskilled, sedentary work, which typically involves little interaction with data or people and requires the performance of only "basic mental tasks." (Report at 42–44; e-CAR at 62.) Judge Peck thus correctly concluded that the ALJ's decision to rely on the Grids rather than consult a vocational expert at the hearing was appropriate and supported by substantial evidence. (Report at 44–45.) *See, e.g., Zabala*, 595 F.3d at 411 (upholding ALJ's finding of no significant non-exertional limitation where plaintiff's mental condition did not limit her ability to perform unskilled work).[3]

---

[2] The ALJ found that Plaintiff's non-exertional limitations included major depressive disorder and mild to moderate difficulties with attention, concentration, and memory. (*See* Record at 53, 56–57, 59–60, 62.)

[3] Plaintiff also states, without any elaboration, that the Report is "erroneous in finding that [the ALJ's] analysis at step 5 . . . is supported by substantial evidence" and that Judge Peck "failed to consider the appropriate legal standards." (Obj. at 35.) To the extent that Plaintiff means to object to the ALJ's credibility findings or development of the record in connection with his findings at step five, those objections are addressed below. Otherwise, the Court finds that the ALJ's analysis at step five is supported by substantial evidence for the reasons discussed in Judge Peck's Report. (*See*

9

B. New Evidence

Plaintiff next contends that Judge Peck erred by failing to remand Plaintiff's case to the ALJ to consider certain post-hearing evidence submitted to but rejected by the Appeals Council. (Obj. at 35–40.) She identifies three pieces of evidence in particular: (1) an MRI report generated nearly a year after the ALJ's decision, (2) a statement from a psychiatrist whom Plaintiff began seeing after the decision, and (3) a notation from Dr. Blatt, one of Plaintiff's treating physicians, that predates the hearing but that Plaintiff received after the ALJ's decision. (*See id.* at 37–39; e-CAR at 20, 10–16, 716.) These records, Plaintiff argues, "relate to the relevant time period and provide unique insight" into Plaintiff's alleged disability. (Obj. at 37.) Plaintiff contends that the MRI report, for example, could show that Plaintiff's spinal condition was progressive, which in turn could support her claim that her back pain was more serious at the time of the hearing than the ALJ found it was, while the psychiatrist's statement could confirm that Plaintiff suffered from hallucinations during the relevant time period. (*Id.* at 37–39.)

Judge Peck, however, correctly declined to remand this case, since the post-hearing evidence in the record does not qualify as "new and material evidence" that "relate[s] to the period on or before the date of the [ALJ's] hearing decision," as required by the relevant regulations. *See* 20 C.F.R. §§ 404.970; 416.1470; 404.976(b); 416.1476(b). Such evidence must not be "merely cumulative of what is already in the record," and must be "both relevant to the claimant's condition during the time period for which benefits were denied and probative." *Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991). The Appeals Council examined the post-hearing evidence in this case and found that it either did not relate to the time period for which Plaintiff sought disability benefits or duplicated evidence already submitted to the ALJ. (e-CAR at

---

Report at 39–45.) As for Plaintiff's statement that Judge Peck failed to consider the appropriate legal standards, the Court finds no basis for that assertion.

2.) The Court agrees. The MRI record and psychiatrist's statement both post-date the ALJ's decision, and while later medical evidence can provide information about a patient's condition at an earlier date, Plaintiff has not sufficiently shown that it does so here. Her contentions about the light shed by the new MRI on her back's condition more than a year earlier are speculative, and her characterization of the psychiatrist's statement as "relat[ing] to [Plaintiff's] psychiatric condition since 2011" is simply wrong – the record expressly states that it describes Plaintiff's symptoms as of January 3, 2015, a few days after the ALJ issued his decision.[4] (Obj. at 37–38; e-CAR at 14.) And although Dr. Blatt's notation pre-dates the hearing, it largely duplicates evidence that the ALJ considered at the hearing, as the Appeals Council explained (e-CAR at 2), and it certainly duplicates the evidence that Plaintiff argues is material – namely, that she was taking Seroquel to "help her stop hearing things." (Obj. at 39; *compare* e-CAR at 716 (noting Seroquel), *with* e-CAR at 658 (noting Seroquel).) Altogether, Plaintiff has failed to establish a "reasonable possibility" that the post-hearing evidence "would have influenced the [ALJ] to decide [her] application differently." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988). Consequently, the Court finds that Judge Peck did not err by failing to remand this case for further consideration of that evidence.[5]

---

[4] Plaintiff's confusion on this score may be attributable to the way in which the psychiatrist filled out the relevant questionnaire. The fifth page of the questionnaire asks the psychiatrist whether, "[i]n [his] best medical opinion, [his] patient's symptoms and related limitations as detailed in this questionnaire apply as far back as _____ ?," with the date to be filled in by the patient. The form then directs the psychiatrist to check either "yes" or "no." The next question asks, "If not, as of what date do your patient's symptoms and related limitations as detailed in this questionnaire apply? _____," with the date to be filled in by the psychiatrist. In Guerrero's questionnaire, the date "9/1/2011" was typewritten into the first blank – in other words, the psychiatrist was asked whether he thought the limitations he observed on April 18, 2015, the date he completed the questionnaire, applied as far back as September 1, 2011. Although the psychiatrist failed to check either "yes" or "no," he did write "1/3/2015" in the next blank. Plaintiff perhaps takes the psychiatrist's failure to check "yes" or "no" to mean that the psychiatrist *did* think Plaintiff's limitations applied as far back as September 1, 2011. But the clear implication of his answer to the following question, which begins with the qualifying phrase "[i]f not," is that he instead thought her limitations applied only as far back as January 3, 2015. (*See* Record at 14.) Indeed, no other inference is plausible.

[5] Finally, Plaintiff vaguely "note[s]" that "some of the evidence that was weighed by the Appeals Council was not included in the administrative record," and that Judge Peck "appears" to have "either overlooked or erroneously dismissed the absence of 27 pages of evidence, including 15 pages from [Plaintiff's] treating sources," which "merits

## C. Development of the Record

Plaintiff also maintains that Judge Peck erred in finding that the ALJ adequately developed the administrative record. (Obj. at 40–43.) Specifically, she identifies a hodgepodge of "gaps in the record," including that (1) the hearing before the ALJ lasted only twenty-three minutes and included "aggressive" questioning, (2) the second page of an MRI report was missing from the record, (3) the ALJ did not hear any witness testimony, (4) the ALJ relied on the opinion of a doctor who cleared Plaintiff to perform only limited rather than full-time, competitive work, and (5) the ALJ failed to subpoena records from one of Plaintiff's primary care physicians. (*Id.* at 40–43.)

Having reviewed the record and the hearing transcript, the Court finds Plaintiff's characterizations to be inaccurate. While ALJs have a "general duty to develop the administrative record," they are "required affirmatively to seek out additional evidence only where [the record has] 'obvious gaps.'" *Eusepi v. Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014) (summary order) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 & n. 5 (2d Cir. 1999)). The record here was more than "adequate for [the ALJ] to make a determination as to disability." *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996). In reaching his decision, the ALJ studied a voluminous record that included extensive medical history and opinions from a number of treating and consultative physicians. His questioning at the hearing was wholly appropriate, and the length of the hearing – at which Plaintiff was represented by counsel – does not, standing alone, reveal anything about the full development of the record. The rest of Plaintiff's objections are either insubstantial or simply unfounded. For example, there is no evidence to suggest that the single missing MRI page contained information that supported a finding

---

remand." (Obj. at 36.) But Plaintiff – who submitted the documents in question and presumably knows what they included – makes no attempt to explain why or how those documents constitute "new and material evidence" that "relate[s] to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. §§ 404.970; 416.1470; 404.976(b); 416.1476(b). Accordingly, the Court declines to remand this case on the basis of an alleged gap in the record before the Appeals Council.

of disability, and in any event, the missing page is more than compensated for by another complete MRI report prepared a few weeks later. (*See* e-CAR at 668.) Similarly, the intimation that the ALJ did not understand the opinion of the doctor who cleared Plaintiff to perform limited work is entirely speculative, and the ALJ in fact had records from the treating physician Plaintiff identifies (*see* e-CAR at 268–73). In sum, Plaintiff simply has not identified any "gaps in the record" that warrant remand to the ALJ for further development. *See Perez*, 77 F.3d at 48 (rejecting failure-to-develop objection where "[t]he ALJ had before him a complete medical history, and the evidence received from the treating physicians was adequate for him to make a determination as to disability"); *Puente v. Comm'r of Soc. Sec.*, No. 14-cv-4427 (GWG), 2015 WL 5474106, at *10 (S.D.N.Y. Sept. 18, 2015) ("[I]t is well established that where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." (citing *Rosa*, 168 F.3d at 79 n.5)).

### D. Credibility Assessment

Plaintiff next objects to Judge Peck's approval of the ALJ's assessment of Plaintiff's credibility – specifically, his conclusion that Plaintiff was not entirely credible in her description of the severity of her symptoms. (Obj. at 43–49; *see also* Report at 26–32; e-CAR at 52–60.) In scattershot fashion, Plaintiff maintains that the ALJ, in assessing her credibility, improperly (i) emphasized her lack of "vegetative" depression and "uncontrolled" anxiety, (ii) discounted certain medical opinion evidence about more serious memory and cognitive limitations, (iii) underscored a mental health consultant's opinion that she was exaggerating her difficulties with memory and concentration, and (iv) questioned her about her work and education history, use of a cane, and

ability to speak English. (Obj. at 43–49.)⁶ Plaintiff's argument here is unfocused, but she appears to contend that the ALJ's consideration of these factors constituted error because they were "issues of credibility unrelated to [Plaintiff's] medical condition." (*Id.* at 46 (citing Social Security Ruling 16-3p).)

The Court disagrees. Judge Peck's Report correctly concludes that the ALJ "met his burden in finding [Plaintiff's] claims [about the severity of her impairments] not entirely credible because the objective medical evidence and [Plaintiff's] own testimony failed to support her claims of disability." (Report at 31–32.) While ALJs are "required to take [a] claimant's reports of pain and other limitations into account," they are "not required to accept the claimant's subjective complaints without question" and "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 416.929; *McLaughlin v. Sec'y of Health, Educ. & Welfare*, 612 F.2d 701, 704–05 (2d Cir. 1980)). Reviewing courts, meanwhile, "must show special deference to an ALJ's credibility determinations because the ALJ had the opportunity to observe plaintiff's demeanor while testifying." *Marquez v. Colvin*, No. 12-cv-6819 (PKC), 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *Yellow Freight Sys. Inc. v. Reich,* 38 F.3d 76, 81 (2d Cir. 1994)).

Here, in assessing the credibility of Plaintiff's testimony at the hearing, the ALJ properly followed the two-step process specified in the applicable regulations: he first found that Plaintiff's

---

⁶ In conjunction with her objection to the ALJ's credibility assessment, Plaintiff also asserts that the ALJ committed legal error by holding her to an improperly high evidentiary standard. (Obj. at 43.) Specifically, she seems to argue that the ALJ erroneously found her not disabled merely because there was no evidence of "vegetative depression" or "uncontrolled anxiety" in the medical record. (*Id.* at 43–44.) Although Plaintiff is correct that a claimant need not demonstrate "vegetative depression" or "uncontrolled anxiety" in order to be found disabled, she inaccurately characterizes the ALJ's findings to which she objects. The ALJ mentioned "vegetative depression" and "uncontrolled anxiety" in the course of comparing the objective medical evidence of Plaintiff's impairments with her statements about their persistence, intensity, and limiting effects. (*See* Record at 57.) He did not suggest that evidence of vegetative depression or uncontrolled anxiety was a necessary predicate to a finding of disability. To the extent that Plaintiff means to argue that the ALJ's credibility findings were not supported by substantial evidence with respect to Plaintiff's testimony about the limiting effects of her impairments, that objection is addressed in the remainder of this section.

"medically determinable impairments could reasonably be expected to produce [her] alleged symptoms," but then determined that "[Plaintiff's] statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely credible and [did] not establish that she [was] unable to perform work on a sustained basis." (e-CAR at 57; *see also* e-CAR at 52–57; Report at 29–31); *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1529). He supported that determination with "examples of inconsistencies between [Plaintiff's] testimony and the medical record, the magnitude of treatment [she] received for her physical and mental impairments, and [her] testimony regarding her activities of daily living." (Report at 29; *see* e-CAR at 52–59); *see also Genier*, 606 F.3d at 49 ("The ALJ must consider '[s]tatements [the claimant] or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts to work, or any other relevant statements [he] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings.'") (citing 20 C.F.R. §§ 404.1512(b)(3), 404.1529(a)). Contrary to Plaintiff's contentions, the various pieces of evidence that the ALJ considered in making his determination were all related to her physical and mental impairments. His credibility assessment was thus free of legal error and supported by substantial evidence, as Judge Peck correctly found.

E. Opinion Evidence and the Treating Physician Rule

Plaintiff also objects to Judge Peck's approval of the ALJ's application of the treating physician rule, which requires ALJs to give a treating physician's opinion "controlling weight" if it is "well-supported" and "not inconsistent with the other substantial evidence in [Plaintiff's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran*, 362 F.3d at 32 (noting controlling weight does not apply where "treating physician issued opinions that [were] not consistent with other substantial evidence in the record"). In determining whether a treating physician's opinion is consistent with other substantial evidence in the record, "genuine conflicts in the medical evidence

15

are for the ALJ to resolve." *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). If a treating physician's opinion is not entitled to controlling weight, the ALJ must consider several factors in determining how much weight to accord the opinion, including "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (*citing Burgess*, 537 F.3d at 129); *see also* 20 C.F.R. § 404.1527(c)(2) ("When we do not give the treating source's opinion controlling weight, we apply the factors [listed above] in determining the weight to give the opinion."). "After considering [these] factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129; *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

Plaintiff argues that the ALJ in this case should have given more weight to the opinions of Dr. Jimenez, a treating psychiatrist, and Nurse Practitioner Richey, who completed a Lumbar Spine Impairment Questionnaire for Plaintiff in September of 2014. (Obj. at 49–51.) She also objects more generally – and quite vaguely – to the ALJ's assessment of various other (unidentified) physicians' opinions. (*Id.* at 49.) The Court once again disagrees with Plaintiff's conclusory arguments and finds that the ALJ here properly applied the treating physician rule. In weighing the opinions of the physicians who regularly treated Plaintiff during the relevant time period, the ALJ carefully considered all of the evidence in the record, resolved genuine conflicts, weighed less heavily those opinions that were inconsistent with other substantial evidence, and thoroughly explained his reasoning. (*See* e-CAR 52–60.) With respect to Nurse Practitioner Richey in

particular, as Judge Peck's Report explains, the ALJ correctly assigned her questionnaire responses little weight, since she is not a treating source whose opinion is entitled to controlling weight under the regulations and her responses were contradicted by other evidence throughout the record. (Report at 34–36; e-CAR at 59.) As for Dr. Jimenez, the Court has some difficulty discerning the precise nature of Plaintiff's objection, but she seems to argue that the ALJ inaccurately characterized Dr. Jimenez's opinion by exaggerating the extent to which his notes show that Plaintiff's mental impairments improved over the course of two years. (Obj. at 49–50.) Plaintiff does not frame her objection in terms of the treating physician rule, however; in effect, she asks the Court to subvert the statutory scheme and weigh the medical evidence for itself. In any case, as Judge Peck detailed, the ALJ combed through Dr. Jimenez's treatment records and properly considered the applicable factors in determining how heavily to weigh his opinion. (Report at 36; *see also* e-CAR at 59–60.) In sum, Judge Peck's findings with respect to the ALJ's application of the treating physician rule were wholly justified.

F. Compliance with Treatment

Finally, Plaintiff makes a near-indecipherable objection to the ALJ's observations about her compliance with certain prescribed treatment regimes. (Obj. at 51–52.) The gist of her argument seems to be that the ALJ, in determining that Plaintiff was not disabled, improperly considered evidence that she failed to use a CPAP machine, discontinued mental health treatment, and declined to take certain medications. (*Id.*) But as Judge Peck found, the ALJ appropriately incorporated those facts into his assessment of Plaintiff's overall credibility when he evaluated her subjective characterization of the severity of her symptoms. (Report at 31; *see also* e-CAR at 58.) Indeed, as touched upon earlier, the ALJ considered a host of facts in addition to Plaintiff's noncompliance with prescribed treatment – including Plaintiff's descriptions of her daily activities, her inconsistent statements in the record, and her relatively conservative course of treatment – before concluding

17

that she was not an entirely credible witness. (e-CAR at 58; Report at 31.) His credibility assessment was thus entirely proper, and Judge Peck was correct to endorse it.

## IV. CONCLUSION

For the foregoing reasons, the Court adopts the Report in all material respects and finds that the ALJ's decision denying Plaintiff's claims for disability insurance applied the correct legal standards and was supported by substantial evidence. Accordingly, Defendant's motion for judgment on the pleadings is GRANTED. The Clerk of Court is respectfully directed to terminate the motions pending at docket number 13, enter judgment in favor of Defendant, and close this case.

SO ORDERED.

Dated:     September 13, 2017
              New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE